**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JENNIFER CHARTIER,
o/b/o Eugene R. Chartier, Deceased

       Plaintiff,               CIVIL ACTION NO. 2:07-10912

vs.

                                          DISTRICT JUDGE AVERN COHN

COMMISSIONER OF               MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

**RECOMMENDATION:** Defendant's Motion for Summary Judgment should be GRANTED and Plaintiff's Motion for Summary Judgment should be DENIED, as there was substantial evidence on the record that Plaintiff remained capable of performing a significant number of jobs in the economy.

\*\*\*

Plaintiff[1] filed an application for Disability Insurance Benefits on June 30, 2000, alleging that he had been disabled and unable to work since September 15, 1999 due to right shoulder and arm impairments. (TR 67, 73, 84). The Social Security Administration denied benefits. (TR 43). A requested *de novo* hearing was held on June 6, 2001 before Administrative Law Judge (ALJ) Cynthia M. Bretthauer who issued a decision dated August 1, 2001, denying benefits. (TR 168-74). The Appeals Council remanded the claim for additional proceedings. A second administrative hearing was held on December 9, 2003 before ALJ John A. Ransom who subsequently found that the claimant was not under a disability at any time from the amended onset date of August 1, 2001 to March 3, 2004. (TR

---

[1] Jennifer Chartier was substituted as Plaintiff upon the death of claimant Eugene R. Chartier. (TR 515) References to "Plaintiff" herein will refer to Plaintiff and claimant.

32).  The ALJ found that Plaintiff was disabled as of March 3, 2004 when he attained the age of 55.  (TR 32).  The Appeals Council declined to review the ALJ's decision.  (TR 7).  The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits for the period of time prior to March 3, 2004 was supported by substantial evidence on the record.

Plaintiff was fifty-four years old at the time of the December 9, 2003 administrative hearing, had a high school education, and had previously worked as a forklift operator and on the assembly line at Dephi from 1977 to September 1999.  (TR 84, 90, 97, 531).  Plaintiff has not engaged in any substantial gainful activity since the onset date of his alleged disability.  (TR 31, 84).  Plaintiff complains of severe pain in his right shoulder and arm.  (TR 84).  He reports that his pain started at work when he reached up to perform a task and his shoulder "popped."  (TR 105).  Plaintiff also reports that he has hepatitis C, numbness in his hand and fatigue.  (TR 108, 110).

Plaintiff lives with his girlfriend and has a daughter.  (TR 68, 104, 522).  Plaintiff's girlfriend responded to a Daily Activities Report dated August 15, 2000 and reported that Plaintiff's activities consist of watching television, talking on the phone and visiting with friends and family.  (TR 99, 522).  Plaintiff's testimony confirms that he usually watches television.  (TR 522).  He also enjoys going to movies and to church.  (TR 100, 522).  He used to enjoy working in the yard and playing pool, however, he is no longer able to do these activities.  (TR 99-100).  Plaintiff's girlfriend reports that Plaintiff does not drive because he cannot use his right arm to turn the wheel fast.  (TR 101).  She reports that he cannot use his right arm for tasks and chores around the house and needs help with shaving and dressing.  (TR 101).  Plaintiff testified that he plays bingo with his girlfriend.  (TR 530).

Plaintiff reported that he has a drinking problem, he attends counseling once a month and Alcoholics Anonymous two to three times a week, and he is only drinking once or twice a week.  (TR 522-23).  Plaintiff testified that he has high blood pressure.  (TR 523).  He testified that he tore his right

bicep and he wears a brace when it hurts. (TR 523-24). Plaintiff reports that he can carry about forty pounds with his right arm if he leaves the arm down at his side. (TR 524). He testified that with repetitive lifting he could only lift ten pounds for ten minutes before his arm would "start to kill" him. (TR 525).

Plaintiff testified that he raked leaves, however, it took him two days to rake one half of the leaves in his yard. (TR 526). It takes him three days to mow his lawn using a riding lawn mower. (TR 526). Plaintiff reports that he does not have trouble with walking and standing or sitting for long periods of time, however, he cannot lift much weight because of his right arm. (TR 107, 527). During the day, Plaintiff alternates between sitting and lying down and elevates his feet when he is sitting. (TR 526, 528). Plaintiff testified that he was told to keep his right leg elevated for his cellulitis. (TR 471, 528). Plaintiff testified that he does not have neck pain or restrictions related to turning his neck. (TR 529). He stated that his fifth and sixth vertebrae are "frozen together" so he lost some mobility, "but not much." (TR 529). Plaintiff complains that his right hand goes numb when he sleeps, but he does not have any trouble gripping, grasping, writing, buttoning buttons or picking up coins with the hand. (TR 528).

Plaintiff reported that he takes the following medications: Propoxy (TR 106); Cyclobenzaprine (TR 106); Norlex (TR 106) and Darvocet as needed for pain (TR 106); Flexeril (TR 109). He reports that the medication helps but he still has some pain and the medications make him sleepy. (TR 106, 525).

**MEDICAL RECORD**

Plaintiff's complaints of pain in his neck and arm go back as far as 1988 when he injured his neck in a karate class. (TR 333, 334). X-rays from 1994 through 1996 reveal degenerative interarticular joint disease of the lower cervical spine, osteophytic lipping, narrowing in the area of C5—C6 and C6-

3

C7, cervical radiculopathy, degenerative changes of the right shoulder, and moderate bone spurring. (TR 209, 297, 314, 315). In August 1996 Plaintiff suffered a contusion to his chest and shoulder and a facial laceration as the result of an auto accident. (TR 213). Plaintiff underwent an anterior spinal fusion with a plate and screws associated with the vertebral bodies of C4-C5 and C6. (TR 224, 230-31). On April 22, 1997 Mokbel K. Chedid, M.D. reported that Plaintiff was doing well from his surgery and his wound had healed. (TR 223). Dr. Chedid reported that Plaintiff was going to return to work with weight restrictions and work no more than six to eight hours per day for six weeks. (TR 223). Dr. Chedid also recommended therapy to strengthen Plaintiff's neck. (TR 223). In June 1997 Plaintiff complained of pain in his hands after working in his yard. (TR 222). Dr. Chedid noted that Plaintiff was questioning his ability to return to work. (TR 222). Dr. Chedid noted that "[i]t is possible he may not be able to work to potential" and extended Plaintiff's therapy. (TR 222).

In May 1998 Plaintiff was diagnosed with chronic hepatitis. (TR 282). On June 10, 1998 Jerry L. Dutton, D.O. reported that Plaintiff's biopsy also showed early bridging fibrosis or cirrhosis and Dr. Dutton reported that he spoke with Plaintiff at length about Plaintiff's drinking. (TR 248). Plaintiff denied having any depression at that time. (TR 248). On May 29, 1998 Dr. Chedid noted that Plaintiff reported problems with the right side of his neck, bilateral wrist pain and muscle spasms in the bilateral forearms. (TR 221). Dr. Chedid ordered an EMG of the upper right extremity and noted that Plaintiff may need to perform a job where he does not have to repeatedly turn his head to the right. (TR 221). Dr. Chedid examined Plaintiff on August 7, 1998 for a follow-up and noted no weakness on examination. (TR 220). A June 4, 1998 EKG was slightly abnormal "reflecting chronic partial denervation and residual changes at C5-C6, but nothing acute." (TR 220). Plaintiff was given Darvocet for pain. (TR 220). Another electromyography report was completed on July 3, 2000 and Henry Hagelstein, D.O. reported that it was essentially unchanged from the 1998 study, showing no evidence

for an acute or ongoing denervation process. (TR 135-36).

On August 12, 1998 Dr. Dutton noted that Plaintiff's "depression is much cleared up." (TR 247). He noted that Plaintiff was on Prozac and wanted to go back on Interferon treatment. (TR 247). "He feels no depression but is somewhat anxious." (TR 247). On September 1, 1999 Plaintiff underwent an MRI of the cervical spine which revealed mild ventral extradural defects at the C6-C7 and C7-T1 levels and may represent mild disc herniation. (TR 129). Plaintiff was also examined by Dr. Chedid during 1999 and 2000 for right shoulder pain. (TR 116-19). Plaintiff began physical therapy on September 24, 1999 and reported on December 17, 1999 that it was helpful for a short time. (TR 114, 117). An Electromyography Report dated September 2, 1999 showed an essentially normal study. (TR 113).

A Physical Residual Functional Capacity Assessment was completed on April 24, 2000 and the physician concluded that Plaintiff has the following exertional limitations: Occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and limited pushing and/or pulling in the upper extremities. (TR 121). Plaintiff has postural limitations and can only occasionally climb, balance, stoop, kneel, crouch and crawl. (TR 122). The consulting physician found Plaintiff to be limited in the right arm in reaching in all directions, including overhead, handling (gross manipulation) and fingering (fine manipulation). (TR 123). However the consulting physician noted that handling and fingering with the upper right extremity was still feasible. (TR 123). Plaintiff was limited to avoid all exposure to hazards including machinery and heights. (TR 124). The consulting physician found that Plaintiff was partially credible. (TR 120-125).

On May 23, 2000 Plaintiff was examined by Frederick C. Schreiber, D.O. who diagnosed a chronic rotator cuff tear in the right shoulder. (TR 134). Dr. Schreiber opined that Plaintiff can work

5

unrestricted with his arm at his side, however, he cannot work with his arm away from his side. (TR 132-34). Dr. Schreiber also noted that Plaintiff was "obviously anxious" and suggested that there was a significant emotional overlay to Plaintiff's complaint. (TR 132, 134). On June 15, 2000 Dr. Schreiber reviewed an MRI of Plaintiff's right shoulder and reported that it revealed profound atrophy with fatty alteration of the supraspinatus and infraspinatus. (TR 128, 130). There was no muscle mass left and Plaintiff had a "massive tear of the rotator cuff" which is chronic in nature. (TR 130). Dr. Schreiber opined that this was an irreparable lesion and even if it was repaired, Plaintiff would have a "lifelong restriction for work where he can only work at waist level." (TR 130).

On September 11, 2000 Paul Liu, D.O., child psychiatrist completed a Psychiatric Review Technique. (TR 139). Dr. Liu noted no indication of limitations of daily activities due to anxiety. (TR 140). Dr. Liu noted that Plaintiff avoids using his right hand because he alleges it will hurt later. Dr. Liu did not find credible claimant's statement that "he had to stop working because severe pain (sic) in shoulder and arm prevent any physical activity." (TR 148). Dr. Liu reported that there is "No Medically Determinable Impairment" and referred Plaintiff to another medical specialty for a "coexisting nonmental impairment." (TR 139).

On January 29, 2001 Plaintiff was examined after he fell off his porch. (268-69). A radiographical exam revealed undisplaced hairline fractures involving the lateral aspects of the seventh and eight ribs. (TR 268-69). An August 9, 2001 electromyography report of Plaintiff's upper right extremity revealed some residual changes of a previous, remote stable C5 and/or C6 radiculopathy, but no evidence of an acute radiculopathy, plexopathy, large fiber neuropathy or myopathy. (TR 252).

Plaintiff went to the emergency room on November 14, 2001 for a bicep tendon rupture. (TR 262, 353). Plaintiff was prescribed Vicodin and range of motion exercises. (TR 353). A Doppler was negative for acute deep venous thrombosis of the right arm. (TR 256, 262). An examination revealed

6

positive ecchymosis over the lower aspect of the right biceps and tenderness. (TR 350). A May 21, 2002 radiographic examination of the chest was normal and revealed no acute parenchymal process. (TR 356).

On July 10, 2002 Plaintiff was seen at Saint Mary's Hospital. (TR 357). Plaintiff presented as depressed, crying frequently and reporting that he "wants to stop drinking." (TR 357). Plaintiff reported a longstanding history of depression and alcohol abuse. (TR 357). Plaintiff denied suicidal and homicidal ideation. (TR 357). Genevieve DeBeaubien, M.D. diagnosed acute exacerbation of chronic depression and acute exacerbation of chronic alcohol dependency. (TR 358).

Plaintiff was admitted to Genesys Regional Medical Center on May 14, 2003 for swelling in his right leg. (TR 482, 490, 495). Mahamad Bakri, M.D. noted that the findings "were not consistent with deep vein thrombosis in the veins well seen." (TR 485). The posterior tibial veins of the proximal calf were the only veins not well seen. (TR 485). Plaintiff was hospitalized for approximately six days. (TR 462).

Plaintiff was diagnosed with acute cellulitis in the right leg, chronic alcohol abuse, hepatitis C, peripheral edema, chronic obstructive pulmonary disease, liver disease with coagulopathy, thrombocytopenia and hypertension. (TR 434). A heart murmur was also noted with a note to "rule out underlying valvular disease." (TR 365). The attending physician noted that Plaintiff was immunocompromised due to his cirrhosis of the liver from hepatitis and alcoholism. (TR 482). Plaintiff had limited range of motion in his right leg due to swelling and in his right arm due to his torn rotator cuff. (TR 439, 460).

Plaintiff also complained of abdominal pain and an ultrasound revealed mild thickening of the gall bladder wall and the spleen appeared mildly prominent. (TR 379). The visual proportions of the liver and pancreas were normal. (TR 379). X-rays revealed that the heart, mediastinum and aorta were

normal, the lungs were clear and the bony thorax was intact. (TR 378). There was no evidence of acute hepatitis A or B infection. (TR 376).

Plaintiff met with a social worker at the hospital on May 20, 2003. (TR 465). The social worker noted that Plaintiff reported a "recent nervous breakdown," depressed feelings and anxiety attacks. (TR 465). Plaintiff reported that he had taken medications in the past for depression but was not currently taking any. (TR 465).

## ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although the Plaintiff met the disability insured status requirements, had not engaged in substantial gainful activity since his alleged onset date, and suffered from right shoulder derangement, degenerative disc disease, hepatitis C, acute cellulitis of the right leg, peripheral edema, cirrhosis of the liver with coagulapathy thrombocytopenia, chronic obstructive pulmonary disease, depression and an alcohol addiction disorder, all severe impairments[2], he did not have an impairment that met or equaled the Listings of Impairments. (TR 31). Additionally, the ALJ found Plaintiff's testimony was not totally credible, found he could not perform any of his past relevant work, but concluded that he was capable of performing a significant range of light work and therefore was not suffering from a disability under the Social Security Act. (TR 31-32).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant

---

[2]Plaintiff argues that the ALJ did not make a finding regarding whether the impairments singly or in combination were severe, however, the ALJ's decision states that they are not severe enough, "either singly or in combination" to meet or equal the Listings. (TR 26).

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this court to try cases *de novo*, or resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Commissioner*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

## **DISCUSSION AND ANALYSIS**

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) he was not presently engaged in substantial gainful employment; and

(2) he suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e). If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider his residual functional capacity ("RFC"), age, education and past work experience to determine if he could perform other work. If he could not, he would be

deemed disabled. *Id.* § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff argues that the ALJ's hypothetical to the Vocational Expert ("VE") did not accurately describe the Plaintiff's impairments. Plaintiff argues that while the ALJ found that Plaintiff had ten severe impairments, there were four "severe" impairments that were not incorporated into the hypothetical to the VE and Plaintiff's RFC: Depression, cirrhosis of the liver with coagulapathy with hepatitis C, alcohol addiction disorder and chronic obstructive pulmonary disease. (Pl.'s Br. at 4-7).

Where an ALJ poses an accurate hypothetical to the VE, and the VE testifies that a person with the described limitations is capable of performing work that exists in significant numbers in the national economy, such testimony is sufficient to support a finding that the claimant is not disabled. *See Varley*, 820 F.2d at 779. The RFC "is meant to describe the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from – though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Social Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). "The hypothetical question posed to a VE for purposes of determining whether [claimant] can perform other work, on the other hand, should be a more complete assessment of her physical and mental state and should include an 'accurate[] portrayal [of her] individual physical and mental impairments." *Howard*, 276 F.3d at 239 (citing *Varley*, 820 F.2d at 779).

"Regarding psychological limitations, such as concentration limitations, the Sixth Circuit has held

10

that the specific psychological limitation need not be specifically mentioned in the hypothetical question if that question accurately describes the claimant's limitations arising from a mental impairment or otherwise accommodates the limitation." *Eiseler v. Barnhart*, 344 F. Supp. 2d 1019, 1028 (E.D. Mich. 2004); *see also Walker v. Sec'y of H.H.S.*, 258 F. Supp. 2d 693 (E.D. Mich. 2003) (an explicit finding of a severe mental condition requires it to be included in the hypothetical question to the VE).

The ALJ determined that Plaintiff has the RFC to perform "a limited range of unskilled light (sic) with restrictions of no pushing or pulling with the right arm, no reaching above shoulder level with the right arm and hand, no prolonged or repetitive rotation, flexion or extension of the neck and simple and repetitive job tasks." (TR 29). The prior ALJ decision found further restrictions of "no repetitive grasping or fine manipulation," however, the ALJ noted that Plaintiff testified at the second hearing that he did not have problems with gripping, grasping or fine manipulation. (TR 29). The ALJ posed two hypothetical questions to the VE. In the first, he asked the VE whether Plaintiff could perform his past work or any other work assuming Plaintiff is 54 years of age, with a high school education, past work as it appears in the record, and the limitations and impairments that Plaintiff alleged, assuming that Plaintiff's testimony is credible. (TR 531). The VE answered that he could not because he naps throughout the day due to pain and the side effects of his medications. (TR 531).

Next, the ALJ asked the VE whether there would be jobs in existence in significant numbers in the regional economy that Plaintiff could perform if he could perform light work requiring no pushing or pulling with his right arm, no reaching above shoulder level with his right arm, no prolonged or repetitive rotation, flexion or extension of his neck and simple repetitive work. (TR 531). The VE testified that there would be such jobs available. Upon further questioning of Plaintiff, the VE testified that Plaintiff's past work was eliminated. (TR 532).

First, Plaintiff alleges that his severe mental impairments of depression and alcohol addiction

11

disorder were not incorporated into the hypothetical. The ALJ found that Plaintiff's severe mental impairments result in moderate difficulties maintaining concentration, persistence or pace, mild restriction of activities of daily living and social functioning, no episodes of decompensation and the affective disorder does not meet the "C" criteria of the Listings. (TR 28).

The ALJ "must properly account for any and all limitations that he finds in his hypothetical question to the VE." *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 929 (E.D. Mich. 2005). Some courts have held that a reference to "unskilled sedentary work" is not sufficient to describe and accommodate concentration deficiencies. *Id.* at 930. However, failure to include a finding that Plaintiff "'often' has difficulty concentrating is not a basis for remand when the hypothetical question adequately describes that claimant's limitations arising from a mental impairment." *Id.* at 929 (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)). However, in this case, the ALJ fully considered the emergency room report of July 10, 2002 wherein Dr. DeBeaubien diagnosed acute exacerbation of chronic depression and acute exacerbation of chronic alcohol dependency. (TR 27-28, 357). The ALJ also mentioned Plaintiff's testimony regarding his alcohol consumption and attendance at counseling and AA. (TR 28). Otherwise, there is no evidence in the record, other than general references to Plaintiff's alcoholism, anxiety and depression, that mention specific functional limitations resulting from Plaintiff's mental impairments. Further, Plaintiff does not cite any evidence in the record which was not considered with respect to Plaintiff's mental impairments or which would require the ALJ to include greater limitations in the hypothetical to the VE. To the extent Plaintiff argues that the ALJ failed to consider and/or include restrictions due to the effects of Plaintiff's depression and alcohol addiction disorder, including Plaintiff's "lack of judgment," evidence of Plaintiff's lack of judgment or an assessment of the same appears nowhere in the record other than as an allegation in Plaintiff's brief. (Pl.'s Br. at 7). Although the ALJ determined that Plaintiff had moderate difficulties maintaining concentration, persistence or

pace, neither Plaintiff nor the ALJ cites to the evidence on which this finding is based. Based on the evidence before the Court, the ALJ's RFC and the hypothetical question limiting Plaintiff to simple repetitive work sufficiently incorporates Plaintiff's mental impairments.

Next, Plaintiff alleges that the ALJ failed to properly account for Plaintiff's severe impairments of cirrhosis of the liver with coagulopathy and hepatitis C. Again, Plaintiff points to no evidence in the record which would lead to a finding of further limitations or would make the hypothetical questions insufficient. Plaintiff speculates that he should avoid working in areas that may cause him injury, such as moving machinery or working as a janitor and in the April 24, 2000 Physical Residual Capacity Assessment the medical consultant concluded that Plaintiff should avoid all exposure to hazards including machinery and heights. (TR 124). This limitation was incorporated into a hypothetical question asked at the June 2001 hearing, however, the ALJ did not incorporate this limitation in the December 2003 hypothetical. Although the ALJ is not required to discuss every piece of evidence in the record, an ALJ should discuss evidence that, if believed, could lead to a finding of disability. The ALJ is required to consider the applicant's medical situation as a whole. *See Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004). The VE testified that Plaintiff could perform work such as an "amusement attendant" and the Dictionary of Occupational Titles includes the titles Amusement and Recreation Attendant and Ride Operator. Both titles may include the tasks of operating amusement concessions and rides and would possibly be precluded by a finding that limits Plaintiff's exposure to hazards. *See* Dictionary of Occupational Titles, 342.663-010 and 68014A. However, the Court finds that this was harmless error because the VE testified to numerous other jobs Plaintiff could perform including teacher's aide, host, usher, school crossing guard and janitor[3].

Finally, Plaintiff alleges that the ALJ failed to account for restrictions related to Plaintiff's

---

[3]Further, the Physical Residual Functional Capacity Assessment containing this limitation predates Plaintiff's amended onset date of August 1, 2001. (TR 24, 120-27).

Chronic Obstructive Pulmonary Disease ("COPD"). Plaintiff alleges that a claimant with COPD would normally require a clean air environment and need to avoid cold air and humidity. Again, Plaintiff does not cite to specific evidence to support this allegation. The Court does not find evidence in the record that would require the ALJ to incorporate further limitations in the RFC or the hypothetical question with respect to Plaintiff's COPD.

The ALJ's hypothetical question to the VE and the corresponding RFC is supported by substantial evidence and incorporates sufficient limitations to address Plaintiff's severe impairments. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted, and the instant Complaint dismissed.

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Sec'y of Health and Human Servs., 932 F.2d 505 (6th Cir. 1991); United States v. Walters, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. Willis v. Sec'y of Health and Human Servs., 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 12, 2008            s/ Mona K. Majzoub
                                                  MONA K. MAJZOUB
                                                  UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: February 12, 2008            s/ Lisa C. Bartlett
                                                  Courtroom Deputy