UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER CHARTIER,
o/b/o Eugene R. Chartier, deceased,

    Plaintiff,

                                                                 Case No. 07-10912
-vs-                                                   Judge Avern Cohn

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

_____/

**MEMORANDUM AND ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, DENYING PLAINTIFF'S MOTION FOR REMAND, AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I. Introduction**

This is a Social Security case. Plaintiff Jennifer Chartier appeals from the final determination of the Commissioner of Social Security ("the Commissioner") denying Social Security disability insurance benefits to her predecessor-in-interest, Eugene Chartier ("Chartier"), for the closed period of August 1, 2001, to March 3, 2004.[1] After the Commissioner issued a final decision, Chartier instituted this action for judicial review under 42 U.S.C. § 405(g). The matter was referred to a magistrate judge who heard Chartier's motion for remand and the Commissioner's motion for summary judgment. The magistrate judge issued a Report and Recommendation ("MJRR")

---

[1] Jennifer Chartier was substituted as Plaintiff upon Eugene Chartier's death on April 24, 2004.

1

recommending that Jennifer Chartier's motion be denied, the Commissioner's motion granted, and the ALJ's decision affirmed. Jennifer Chartier then filed objections to the MJRR. For the reasons that follow, the Court adopts the MJRR.

## II. Facts

### A. Background

The MJRR accurately sets forth the facts, many of which are repeated here.

Chartier was fifty-four years old at the time of the December 9, 2003 administrative hearing. He completed high school and previously worked as a forklift operator and on the assembly line at Delphi from 1977 to September 1999. Chartier had not engaged in any substantial gainful activity since the onset date of his alleged disability.

On June 30, 2000, Chartier filed an application for Disability Insurance Benefits with the Social Security Administration ("SSA") due to right shoulder and arm impairments. The SSA denied benefits. A requested *de novo* hearing was held on June 6, 2001 before an ALJ. The ALJ issued a decision denying benefits. The SSA Appeals Council remanded the claim for additional proceedings, finding that the first ALJ's decision did not pay appropriate attention to Chartier's difficulty in engaging in fine manipulation with his hands. A second hearing was held on December 9, 2003 before another ALJ, who found that Chartier was not under a disability at any time from the amended onset date of August 1, 2001 to March 3, 2004. The ALJ concluded that during this period, Chartier was capable of performing a significant range of light work and therefore was not suffering from a disability under the Social Security Act. The ALJ also found that Chartier became disabled as of March 3, 2004, when he reached the

age of 55. The Appeals Council declined to review the ALJ's Decision, making the ALJ's decision the final decision of the Commissioner.

### B. Lay Testimony

Chartier's girlfriend completed a Daily Activities Report dated August 15, 2000. She reported that Chartier's activities consisted of watching television, talking on the telephone, and visiting friends and family. She also said that Chartier did not drive because he found it difficult to use his right arm to manipulate the steering wheel. Further, she said that Chartier could not use his right arm for tasks and chores around the house and that he needed help with shaving and dressing.

Chartier's testimony confirmed that he often watched television. He testified that he used to enjoy working in the yard and playing pool, but is no longer able to do these activities. Chartier said that he did not have trouble walking, standing, or sitting for long periods of time, and that he could carry about forty pounds with his right arm if he leaves the arm down at his side. With repetitive lifting, he could only lift ten pounds for ten minutes before his arm would "start to kill" him. Chartier further explained that he tore his right bicep and he wears a brace when it hurts.

Chartier also testified that he has a drinking problem and that he has high blood pressure.

### C. Expert Testimony

#### 1. Medical Experts

A physician completed a Physical Residual Functional Capacity Assessment for Chartier in April 2000, finding the following limitations: occasionally lift and/or carry no more than twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk

about six hours in an eight-hour work day, sit for about six hours in an eight-hour workday, and limited pushing or pulling in the upper extremities. The physician opined that Chartier had postural limitations and could only occasionally climb, balance, stoop, kneel, crouch or crawl. The consulting physician found Chartier to be limited in the right arm in reaching in all directions, including overhead, handling (gross manipulation), and fingering (fine manipulation). However, the consulting physician noted that handling and fingering with the upper right extremity was still feasible.

On May 23, 2000, Chartier was examined by Frederick C. Schreiber, D.O., who diagnosed a chronic rotator cuff tear in the right shoulder. D r. Schreiber reported that Chartier could work without restriction with his arm at his side, but could not work with his arm away from his side. After an MRI of the shoulder on June 15, 2000, Dr. Schreiber opined that Chartier's tear would cause "a lifelong restriction for work where he can only work at waist level."

Other evidence showed that Chartier had been diagnosed with hepatitis C, coagulopathy, depression and alcohol addiction.

### 2. Vocational Expert

The ALJ posed two hypothetical questions to the Vocational Expert ("VE"). In the first, he asked the VE whether Chartier could perform his past work or any other work assuming that Chartier was 54 years of age, with a high school education, past work as it appeared on the record, and the limitations and impairments that Chartier described, assuming Chartier's testimony was credible. The VE answered that he could not perform his past work under such circumstances because he found it necessary to take naps throughout the day due to pain and the side effects of his medications.

The ALJ then asked the VE whether there would be jobs in significant numbers in the regional economy that Chartier could perform if he could perform light work requiring no pushing or pulling with his right arm, no reaching above shoulder level with his right arm, no prolonged or repetitive rotation, no flexion or extension of his neck, and limited to simple repetitive tasks. The VE testified there would be such jobs available, although given these limitations Chartier would not be able to perform his past work.

### III. The ALJ's Decision

Following the Appeals Council's remand, the second ALJ found that Chartier met the disability insured status requirements and that he had not engaged in substantial gainful activity since his alleged onset date. The ALJ determined that Chartier suffered from right shoulder derangement, degenerative disc disease, hepatitis C, acute cellulites of the right leg, peripheral edema, cirrhosis of the liver with coagulapathy thrombocytopenia, chronic obstructive pulmonary disease, depression and alcohol addiction disorder, all severe impairments.[2] However, the ALJ found that despite these impairments, Chartier did not have an impairment that met or equaled the listings of impairments. The ALJ also found that Chartier could not perform any of his past relevant work, but that he was capable of performing a significant range of light work and therefore was not suffering from a disability under the Social Security Act.

### IV. The MJRR

After the ALJ issued his decision, the SSA Appeal Council denied review and Jennifer Chartier instituted this action for judicial review. The matter was referred to a

---

[2] Plaintiff argues that the ALJ did not make a finding regarding whether the impairments were severe singly or only in combination. However, the ALJ's decision states that the impairments are not sufficiently severe, "either singly or in combination" to meet or equal the disability listings.

5

magistrate judge, who considered Chartier's motion for remand and the Commissioner's motion for summary judgment. Chartier argued that the hypothetical questions posed to the VE by the ALJ did not incorporate several impairments that the ALJ had found to be severe, and that the VE's opinion that Chartier had been capable of performing work that exists in the national economy therefore lacked substantial evidentiary support. The magistrate judge rejected Chartier's arguments, finding that the hypothetical questions adequately described Chartier's vocational limitations. The MJRR recommended that Chartier's motion be denied and the Commissioner's motion granted.

**V. Standard of Review**

Judicial Review of a Social Security disability benefits application is limited to determining whether "the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997). A reviewing court may not resolve conflicts in the evidence or decide questions of credibility. Brainard v. Sec'y of Health & Human Servs., 889 F.2d 679, 681 (6th Cir. 1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389 (1971). As such, substantial evidence is more than a scintilla but less than a preponderance. Consol. Edison Co. v. NLRB, 305 U.S. 197, 299 (1938). The substantiality of the evidence must be based upon the record taken as a whole. Futernick v. Richardson, 484 F.2d 647, 649 (6th Cir. 1973). The portions of the MJRR that the claimant finds objectionable are

reviewed de novo. See 28 U.S.C. § 636(b)(1)(C); Smith v. Detroit Fed'n of Teachers, Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

## VI. Discussion

Chartier objects to the MJRR on the grounds that the hypothetical questions that the ALJ posed to the VE did not accurately describe his impairments. Chartier argues that the ALJ found that he had ten severe impairments, but failed to incorporate into the hypothetical questions posed to the VE four such impairments: depression, cirrhosis of the liver with coagulapathy with hepaptitis C, alcohol addiction disorder, and chronic obstructive pulmonary disease. Chartier says that because these impairments were judged to be "severe" by the ALJ, there must be some corresponding restrictions in the hypothetical to the VE and resultant Residual Functional Capacity ("RFC").

This argument was addressed in the MJRR. The RFC "is meant to describe the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from – though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 240 (6th Cir. 2002). On the other hand, the hypothetical question posed to a VE for purposes of determining whether a claimant can perform other work "should be a more complete assessment of her physical and mental state," id. at 239, and should "accurately portray[] [the claimant's] individual physical and mental impairments," Varley v. Sec'y of HHS, 820 F.2d 777, 779 (6th Cir. 1987).

### A. Mental Impairments

Chartier argues that his severe mental impairments of depression and alcohol addiction were not incorporated into the hypothetical. The ALJ found that Chartier's

7

severe mental impairments result in moderate difficulty in maintaining concentration, persistence, or pace, mild restriction of activities of daily living and social functioning, and no episodes of decompensation. "Regarding psychological limitations, such as concentration limitations, the Sixth Circuit has held that the specific psychological limitation need not be specifically mentioned in the hypothetical question if that question accurately describes the claimant's limitations arising from a mental impairment or otherwise accommodates the limitation." Eiseler v. Barnhart. 344 F.Supp.2d 1019, 1028 (E.D. Mich. 2004) (citing Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001).

In this case, the ALJ's hypothetical limited Chartier to employment consisting of "simple and repetitive job tasks"; this limitation accurately portrayed Chartier's employment-related limitations stemming from the severe impairments of depression and alcohol addiction. If a hypothetical question accurately portrays the vocational limitations imposed by a claimant's impairments and the VE testifies that a person with the described limitations is capable of performing work that exists in significant numbers in the national economy, such testimony constitutes substantial evidence to support a finding that the claimant is not disabled. Varley, 820 F.2d at 779. Accordingly, the Commissioner's decision that Chartier's psychological impairments were not disabling is supported by substantial evidence.

### B. Cirrhosis of the Liver with Coagulopathy and Hepatitis C

Chartier also argues that the ALJ failed to properly account for Chartier's severe impairments of cirrhosis of the liver with coagulopathy and hepatitis C. He argues that because these impairments were found "severe" enough to affect his ability to perform basic work activities, then there must be some corresponding restrictions to the

8

hypothetical posed to the VE and the RFC.  Specifically, Chartier says that because of his coagulopathy and hepatitis, he should avoid working in close proximity to moving machinery or other things that may cause him injury resulting in bleeding.  This would preclude work as an amusement attendant, one of the positions that the VE identified as conforming to the vocational restrictions set forth in the ALJ's hypothetical.

Chartier's argument fails because he does not cite any medical evidence tending to indicate that his coagulopathy requires him to avoid moving machinery and other such hazards.  Even assuming *arguendo* that Chartier should avoid such hazards, the ALJ's failure to incorporate this restriction into the hypothetical was harmless error.  The VE identified numerous other jobs that comply with the limitations identified in the hypothetical as well as the additional limitation of avoiding moving machinery.  Examples include teacher's aide, host, usher, school crossing guard, and janitor.

### C.  Chronic Obstructive Pulmonary Disease

Finally, Chartier argues that the ALJ failed to account for vocational limitations stemming from his chronic obstructive pulmonary disease into the hypothetical.  Specifically, Chartier says that this impairment dictates that he should work only in environments with clean air and should avoid extremes of cold and humidity.  Again, this argument relies entirely on Chartier's subjective opinion of his vocational limitations; he cites no medical evidence tending to suggest that chronic obstructive pulmonary disease imposes the claimed vocational limitations.  In addition, there is no vocational evidence that any of the potential jobs identified by the VE would expose the claimant to excessive respiratory irritants.

## VII. Conclusion

The findings and conclusions of the magistrate judge are adopted by the Court as supplemented by the above discussion. The ALJ's decision accurately states the applicable legal standards and is supported by substantial evidence. For the reasons stated in the MJRR and above, Chartier's motion for summary judgment is DENIED, and the Commissioner's motion for summary judgment is GRANTED. The case is DISMISSED.

SO ORDERED.

                                                s/Avern Cohn  
                                                AVERN COHN  
                                                UNITED STATES DISTRICT JUDGE

Dated: March 26, 2008

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, March 26, 2008, by electronic and/or ordinary mail.

                                                s/Julie Owens  
                                                Case Manager, (313) 234-5160